May it please the court. Good morning, counsel. Good morning. My name is Mel Orchard from the Spence Law Firm in Jackson, Wyoming, and I'm here on behalf of the families who are the appellants in this cause of action this morning. The issue in this case is the district court used the wrong standard to decide this case. The court decided this case on the merits and instead should have used the summary judgment standard to analyze this case. The reason is when you have facts intertwined dealing with jurisdiction and subject matter, the court must use a summary judgment standard. And when... Is this largely for the court's discretion under our Osborne and Johnson cases? Well, the court has discretion to use three levels. I don't think the court has discretion when the facts are intertwined like this to use anything but the summary judgment standard. They're always intertwined. Well, no, I don't think they always are. And when you look at the cases, Your Honor... Talking about sovereign immunity... Yes. Like qualified immunity, you want to get there early. Yeah, right. And save the, actually all parties, the litigation expense if you can. And you recognize that in the plaintiffs did by engaging in jurisdictional discovery for what, six months was it? Well, five depositions. All right, whatever. So it was... Usually it doesn't take five to get at the issue. Well, we agree. I mean, it usually doesn't take eight years to get to the past subject matter jurisdiction, Your Honor. Eight years ago this June, these families all died. So, but to your point, when you look at the Johnson decision, this court said in that decision that looking at whether or not the scope of employment was severable is something that the court could decide on undisputed facts. Here, on a limited record, five depositions where the court dictated how we were going to operate, even though we had clearly preserved this argument by saying, Your Honor, don't decide this case without going all the way to the merits because the facts are so intertwined. And so instead the court decides to give us five depositions. So on that limited amount of discovery, there was no way it was a fully developed record. And that's the problem. That deprives not just the litigants, but it deprives the district court of the opportunity to fully decide whether or not... I need more. Then there would be a procedural issue on appeal if the court said no. What kind of motion practice was there on five depots is not enough? Well, the court dictated our schedule. We asked the court to make a facial analysis of whether or not we pled subject matter jurisdiction, right? And then when the government for the first time attached a bunch of Google Maps, I'm not being facetious, Google Maps in support of the record, and three new declarations, we asked the court to strike their declarations and said, Could we please take more depositions, to which the district court said no. Well, all right, but that's not on appeal. That discovery ruling is not on appeal, right? I didn't see it in the briefs. It's not on appeal, but I don't think it needs to be on appeal when the court has decided. And we didn't know what standard the court was going to use. Wait a minute. There are two distinct issues. How should the court have proceeded, and then did it do it right? Well, right. We didn't know what standard the court was going to use until we read the order where the court decided the whole case on the merits on a truncated basis. So how are we supposed to go? Well, we... You mean you didn't read Osborne? Well, that's exactly what, I mean, that's exactly what we have taken great pains to point out in Johnson. Well, then I don't understand why the court didn't follow Osborne. Well, I don't understand why you didn't bring that up on appeal. You're just saying this should have been summary judgment standards. Well, you don't go down the 12B1 path and then apply 12B6 or 56 standards. Well, we didn't apply any of those standards. But if the court goes down the wrong path, you point it out to the court. Okay, but you didn't appeal those rulings. You're just up here saying, well, as a matter of hindsight, when all was said and done and the dust cleared, we don't like the standard the court applied. Well, it's true. We're saying when the dust cleared, we don't like the standard the court appealed. Now you want to go back and start over? No. Well, yes, we want to have our chance at an opportunity to be heard and notice of a standard that's going to be applied appropriately, for sure, and to develop that record. Where in the record on appeal will I see the additional discovery itemized that would be required on remand to do a proper summary judgment exercise? I don't think it's in the appeal record. But I could tell you what we would do if we were going to do that. This is just hindsight. This is not an appellate issue. The court used the wrong standard. It is absolutely an appellate issue. It's for this court to cure. This decision is right now being used inappropriately. Cite me a circuit court from anywhere that did a 12B1 exercise and then said, whoops, I've got to apply 12B6 standards, and since I'm looking at extra evidence, this is summary judgment, and I've got to start over. Well, the interesting thing is I can't do that because all these cases are Rule 56. When you look back at the cases in even the 8th Circuit, even the 10th Circuit, 9th Circuit, the 3rd Circuit, they're usually dealing with Rule 56. So we have a fully vetted record. And in this case, I can't imagine anything more crucial than when 20 people die and we have the same statute that confers jurisdiction and substantive law that we don't have a fully developed record. And we requested a fully developed record. That was denied. The court said, and the court, by the way, said, I'm just going to take a little look at jurisdiction. I'm just going to take a small look. Well, but you knew after months it wasn't that. Tell me how, here's the real lurking big issue in this case. How do we tell when the jurisdiction and merits are so intertwined that you get 56 or B6 or something else besides B1? Osborne, Johnson. Well, so the 8th Circuit hasn't developed an actual test on that. Osborne talks about it. It was talked a little bit about in Johnson. But there are three separate tests that the circuit courts have used. One is if the same statute provides jurisdiction and the merits like here, then it is considered to be intertwined. And therefore, a Rule 56 summary judgment standard must be applied. That's one test that's been used. If what? Say that. A rule. Yeah, but say the test again. The test is. It sounded tautological. If the same statute provides jurisdiction and substantively, and they rely on the same Okay, but that's not a test. Well, I'll tell the 9th Circuit that. I'd advise you to find a statute that doesn't satisfy that test. Well, there are some statutes that don't have that. There are some analyses that don't have that jurisdictional statute. So the second test, though, Your Honor, is the jurisdictional question relies on a resolution of an element of the substantive claim. We meet that test, because in the Arkansas recreational use statute, whether there was a malicious failure to guard or warn of an ultra hazardous condition or they were paying fees to camp for the use for the use of the recreational area, we win. That is the those are the same questions that go to a summary judgment standard. Right. So the third test is where there might be overlapping questions of fact between issues and substantive issues. And that's where it should be an issue to be determined on summary judgment, taking the facts of the non movement as true. And by the way, the standard that should have been applied. The government doesn't contest that it should have been applied. So this standard rule 56 is the standard in this court must articulate this case because this case and the underlying district court is a published decision being used as we speak right now for the proposition that a court on a limited basis, even when you go to the ultimate issue of fact, can decide jurisdiction, which is especially in these kinds of cases is a total miscarriage of justice. These folks deserve their day in court to prove these cases. So let me move on to the actual Arkansas recreational use statute. That statute provides for two exceptions to immunity. One is that they pay a fee. And in this particular case, the use of the recreational area is very, very consequential when you compare it to the other cases. Our folks paid to camp in this improved campground. The fee was raised from $10 to $16 in the environmental assessment so that they wouldn't undercut a private operation by their own admission. This money was used to improve the campground that distinguishes it from Greika, from Green's, from all the other cases that are out there from Wilson. Yes. How do we know the private campground wasn't also subject to this exception? Like the, like, was it Carlton? That was a private party, right? The Carlton versus Cleburne case? Well, the one I read last night, where it was a private party who was found that the fee was not, was not, didn't fall into this exception under sub two. Right. I just said, well, they raised the fee from $10 to $16 so that they wouldn't unfairly compete with private parties. My only point is, how do we know those private parties also were not within the sub two exception? Well, I think, well, the statute says, itself says you're not immune if you're using it like a business and you're making money on it. And this is what the government was doing. They were using this money to make improvements. That, that takes them out of the exception right away. I mean, they are, that makes them fall within the exception that confers liability. So they, and by their own statements, were using it for improvements of this property. And that distinguishes it from the case law of the Eighth Circuit, where if it's used specifically for costs, like Greika, where it was undisputed use for costs, then it doesn't fall within that particular exception. Do you have any Arkansas, I know you, you can answer yes or no. Is there an Arkansas case that says the word go on is different than the word enter in the basic statute here? There's not Arkansas authority, is there? I don't think so. Okay, I think we can proceed. May I reserve, unless there are questions right now, can I sit down and reserve, please? Yes. Thank you. Mr. Namaroff. May it please the Court. Patrick Namaroff on behalf of the government. Now, my opposing counsel's argument focused on the standard of review the district court should have applied here. But there are two clear reasons why this court does not even need to reach that issue. And the first one, and maybe the most important one, is that even under a summary judgment standard, the plaintiffs would not be able to show that any of, that either of these exceptions apply. And it's notable that plaintiffs have not identified a single disputed material of fact as to either of these issues. But the other reason, which I think this court's discussion seized on, is plaintiffs failed to adequately raise this issue before the district court. And now plaintiffs here say that, you know, they weren't aware what standard the district court was going to apply. Well, the district court was very clear during the status hearing. The judge said, you know, this is different from a summary judgment. This is pages 13 and 14 in the appendix. Opposing counsel says, A, we raised, we raised it in, I think if I got my case right, we raised it in the, in the pre-consolidation. Right. And, and then in our, in our joint response to your motion, your motion, we incorporated all those arguments. Sure. And let me answer it and then I'd like to move back. That, that's, you know, end of story, frankly. Well. On appeal. I'm happy to move back to the summary judgment standard, Your Honor. But the, the two answers on that are what this court said in Hopkins, page 975 at Hopkins, is that a plaintiff, a party has to make sure the district court actually addresses the issue. And even if it's preserved in some technical sense, if the district court doesn't address the issue, which the district court did not do, in an otherwise very thorough and careful opinion, then the party, you know, should file a motion for reconsideration, should do something to bring it to the district court's attention. The second point, and then I'd really would like to move back to the actual merits of the case, but even in the pre-discovery briefs, they were actually arguing a different issue, Your Honor. What they were arguing was under Kearns that this, the court had to assume jurisdiction. They didn't argue the standard to apply in deciding jurisdiction. They didn't cite any of the decisions that they've cited here. And so I think it's understandable why the district court didn't address this issue. But that all said, even under the summary judgment standard. The district court looked them in the face and said, you don't get full discovery, counsel. Well, as was already discussed, the plaintiffs have not identified on appeal any prejudice they suffered. That's called a non-answer to the question. They looked them in the face, they asked for full discovery, and the district court said no, right? Right. The district court said, well, the district court said you have discovery limited to the issue before it, which is whether the Arkansas recreational use statute applies. And that's the same issue in front of this court. And the plaintiffs didn't preserve any argument on appeal that they didn't get sufficient discovery on that issue, and that issue is dispositive. Now, on the two exceptions, the first exception requires that the landowner maliciously fail to guard or warn against a known ultra-hazardous condition. And here, the facts demonstrate that the government had no basis to know that this area was subject to dangerous flash floods. Now, plaintiffs focus a lot of their argument on whether or not this was a 100-year floodplain. And I can explain why the government reasonably concluded that it wasn't. But regardless, plaintiffs don't argue that a 100-year floodplain Now you're addressing the argument that's in the brief, fully briefed and wasn't raised by opposing counsel. Why don't you address sub 2 of the second exception, which was argued vigorously this morning. Oh, okay. That's fine. I'm happy to address the fee. You're talking about the fee issue? Well, I'm not going to tell you how to argue your case, but at length on things that the appellant didn't reserve in the brief. Sure. If you're, if the court thinks the maliciously failed to guard feel free to argue it. I have a simple question. Is there any Arkansas law about whether inner means something different than go on? I'm not aware of any, Your Honor. So we'll have any guidance at all on that simple little issue, which is kind of a key to the case. Well, I don't think it is a key to the case. The language, the statutory language that's key to the case, Your Honor, is the Arkansas statute defines a charge as an admission fee. And what it says, enter or go on. I'm reading it. It says, which charges you enter or go on. Well, in 1811 302 subsection two, it says, 307 to it says charges to enter or go on. That's right. And then the statute also defines the term charge later. Yeah. And it says charges an admission fee for permission to go upon or use the land. And what courts have uniformly held is that a campground charge or a campground fee is not an admission fee. This is your argument. Your argument is that because it uses the word admissions in the 302, that therefore the way I think about it, go on is out of the language. You forget about the word go on in 307, right? Well, it says to go upon. I mean, it's an admission fee for permission to go upon. But I do think admission fee has real meaning. And what courts have said is if you can go to the recreational area, here are the Albert Pike recreational area. You're saying there's no case law, but the way you try to interpret the statutes together is the best answer on what go on means. Oh, no, there is case law. I mean, there's certainly case law on what admission fee is. We began this by saying there wasn't any case law. Pick a position. Sorry. The case law addresses what an admission fee means, Your Honor. And that is dispositive for this case. So whether it's go upon or enter, I really don't think matters. What matters is whether an admission fee was paid. And what this court said in Wilson is that a charge to stay in a bunk rental there was not an admission fee. And then this court, again, in an unpublished opinion in Graca, applied that in the Arkansas setting to a campsite fee. The Nebraska Supreme Court has reached the same and so have other courts. A charge that's paid for a particular service that is not required to otherwise use the recreational area does not satisfy an admission fee under the definition of this exception. And that's been uniform case law. Is there a case that has addressed in any way your assertion that there's no meaningful distinction between maintenance and improvements? There's not. And let me address why there isn't a distinction between the two, at least in this case. But first let me say that you don't even get to that question if you agree that the campsite charge is not an admission fee. In other words, there are two different ways in which this exception doesn't apply for the government. The first is if the fee that's at issue is not an admission fee, then the exception doesn't apply regardless of what it's used for. The second is even if it is an admission fee, then if it's only used under the statute to reduce or offset costs and eliminate losses, then it still doesn't satisfy the exception. Hold on. I hate to do this because I'm going right back to where you started at. But I mean, if you talk about admission fee and you're going to say that it doesn't make any difference if it's enter or go upon, well, an entrance fee is an admission fee. A fee to use certain facilities might be a fee to go upon the property. That might be something different. And the Arkansas Supreme Court has told us that we should interpret this act as broadly as possible to provide the fullest extent of coverage as possible. So why is it just automatically coterminous and we don't need to worry about that at all? I mean, I really find it hard to think that when the language says an admission fee for permission to go upon or use the land, that there's somehow a distinction between this statute and all of the other statutes that courts have uniformly interpreted to not be triggered by a campsite fee. It's hard for me to understand exactly what our discussion is supposed to seize I honestly am confused by what sort of distinction plaintiffs are trying to draw there. The issue is the plaintiffs paid for a service to use a campsite pad where there's an electrical hookup and a water hookup. They didn't have to pay that to use the recreational area in any respect. And even with respect to Loop D, this particular campsite, people who haven't paid a campsite fee can go into Loop D. They can use the bathhouse. So the idea that that is somehow an enter or go upon, it just is contrary to the plain meaning of the language, consistent with what every other court has said. So it just, I guess if there are further questions on that, I'm happy to answer them, but I just don't understand how it can be an admission fee. And then, of course, even if it were an admission fee, then the question would be, okay, did the government use this for some other purpose than to maintain the campsites at issue? And here, what the record shows, if you look at the appendix, appellant's appendix at page 732, the fees were used to maintain the current state and make improvements is what it says. And by make improvements, what the government official meant was new fire rings, tables, lantern poles, increased bathhouse cleaning and trash removal. The idea that a landowner would lose the protections of a recreational use statute because they were using campsite fees to improve the fire ring or increase cleanings of the area, that just is not, that's completely at odds with the purpose of the statute. It's not as if, you know, plaintiffs would have it that the recreational use landowner must preserve the land in precisely the same condition, otherwise they lose this protection. And that just can't be the case. So either way you look at it, whether you're looking at it as whether or not it's an admission fee or the use of the fees, this exception does not apply, which leaves the plaintiffs only with the first exception, which I'm happy to address. I did think that the government is charging a fee that exceeds its maintenance costs. I guess it, Forest Service can send a check to the treasury or it can build a new or better park. But that seems to me not to be, not to be simply covering your costs. I think if the, if the Forest Service I mean, there isn't, there isn't, the government doesn't make a profit. It spends the money on something. Sure. And our argument is not that if the Forest Service were sending some surplus money to the Treasury Department that that would fall outside of the exception. Certainly that would be a different case, Your Honor. The facts are that it's spending surplus money to have a better National Park System, which we all want them to do. What the undisputed facts show, Your Honor, is that 85% of the money is spent, and let me see where I can find this in the record. I believe it's also page 732 through 733, although I may be wrong. But what they show is that the Forest Service spent 85% on maintenance and improvement of these various campsites. Did you just, you just mumbled an improvement in there? Sure, but the improvements, well, Your Honor. The whole issue is whether improvements are simply covering costs. Your Honor, as I discussed earlier, the improvements that they're talking about are new fire rings, tables, lantern poles, additional cleanings of the bathhouses. The idea that that somehow falls outside of a permissible Additional cleaning wouldn't be improvements. Right. I understand, but that's what the government official was saying. This is what I mean by improvements. Here's a question, and when I read that, I was concerned about whether or not he was really talking about improvements or not. Were we talking about installing new fire rings, or were we talking about replacing old fire rings, or is that a disputed question at this point? I don't think it's a disputed question. I think it's clear what he was talking about was replacing old fire rings with new fire rings. But regardless, the point is that's a big difference to me, because if you're just replacing things that are already there, that sounds to me more like maintenance than it does improvements. Improvements sounds like if you're putting up new structures, and I guess the way they described it is when I read it, it was hard for me to figure exactly what they were talking about. Well, two things. Just on the improvement point specifically, I think even if they were using the loop E, it costs $600,000 to do loop D, and now we're charging enough so that before too long we can do loop E. Sure. That would not trigger the exception to this statute. The idea that a landowner cannot use fees collected to improve the recreational use of others, that that triggers the exception. What's your case for that? Well, there isn't any case law interpreting this. The Arkansas Supreme Court has said to construe this as narrowly as possible. Well, that just isn't really consistent with an ordinary understanding. I mean, even the Arkansas Supreme Court said that. I mean, they were wrong, or they should have paid, they should have given more deference to sovereign immunity, or what? Well, first of all, the Arkansas Supreme Court was addressing a very different question, which is whether. Right. They were addressing whether malice requires intent to harm. So that's a totally different question than whether improvements like a new campsite would trigger this exception. Well, but they said that the reason they were doing that is because it's in derogation of the common law, and that they generally construe statutes in derogation of common law narrowly, and so inverse of that therefore providing as broad a possibility of coverage for injured parties as possible. So why is that same logic not applicable to this question? Well, it still requires a, first of all, I don't think they intended the court to read, say, well, any permissible reading must be the interpretation if it's, you know, the most planar-friendly possible. I think it still has to be a, you know, ordinary understanding of the statute. But regardless, two points. This is not a permissible reading of the statute. To say that a recreational land use owner can't, you know, create a new campsite fee is not an admission fee. If you, you have to say that a campsite fee is an admission fee, then you get to whether or not this, you know, the use of the fees here somehow fell outside of the statute. Thank you. Thank you. Just so it's very clear, the other exception to the Arkansas recreational use statute, the malicious failure to guard or warn, is at page 28 of our brief. It is also at issue. The government said there are no disputed issues of fact. We understand. Okay, good. But don't argue it on rebuttal. Yes, well, I wasn't sure. I want to make sure. I got to know from someone smarter than I. It's definitely briefed in the courts. Good. Because that is hotly disputed. If you read our briefs. What is? The issue of maliciousness and the failure to guard. Don't listen. On the issue of whether this was raised, you've already decided that or at least talked about that. Let me go to the cases that were cited by the government talking about this fee. The Wilson case involved the Boy Scouts that were outside of the building and they were playing with some irrigation pipe. They stood it up and it electrocuted them. They were hurt, well, killed, sadly, outside of the area they were using. Judge Benton, to your question about go upon or use. And same with Judge Erickson. The seminal language is to use in Arkansas. And that distinguishes this case from the other cases where it talks about just an admissions fee. For instance, in the Greika case, that case also undisputed that the costs that they were of the actual use were the fee was being used to offset the cost. Undisputed factually. In that case, the person was hurt walking off a bluff that was unrelated to the use. These folks paid $16 a night to camp. This happened at three in the morning while they were sleeping. According to the record, you get a $50 fine if you don't pay the $16 fee to stay overnight in the campground. And to take this analysis further, I own a little bit of ground in Wyoming and we have it hayed by a cowboy. We don't make any money, but what we use the money for is to improve the fencing around there. And we've improved the fence all the way around. By just using the money for improvements, I'm certainly increasing the value. That's a business operation. To say that on their own testimony and their own environmental assessment, before they had the late filed on their reply brief explanation, they said this is going to be used for improvements, end of story, period. Not, oh, it's just for a fire ring, but at least, at the very least, disputed. We'd sure like the chance to inquire into that, your honors. Respectfully, we would ask that you remand this case to the district court for trial. Decide this on a summer judge motion that there is genuine issues of material fact on the issues that we have pled and preserved. Thank you so much for your time this morning. Thank you, counsel. Significant case. It's been well briefed and argued. We'll take it under advisement.